ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| KAREN HERNÁNDEZ GÓMEZ<br><br>Apelante<br><br>v.<br><br>JOSÉ ANTONIO JIMENEZ RODRÍGUEZ<br><br>Apelado | **TA2025AP00383** | *Apelación* se acoge como ***Certiorari*** procedente del Tribunal de Primera Instancia Sala Superior de Humacao<br><br>Civil Núm. HU2020RF00559<br><br>Sobre: Custodia Monoparental – Relaciones paternofiliales |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 13 de noviembre de 2025.

Comparece ante este foro la Sra. Karen Hernández Gómez (señora Hernández o "la peticionaria") mediante un recurso de *Apelación* el cual se acoge por este Tribunal como *Certiorari*.[1] En este, nos solicita que revisemos varias órdenes emitidas por el Tribunal de Primera Instancia, Sala Superior de Humacao, notificadas el 23 de julio de 2025; y la *Resolución* notificada el 24 de julio de 2025. Mediante los referidos dictámenes, el foro primario declaró no ha lugar a la solicitud de término adicional solicitado por la peticionaria. Por consiguiente, acogió las recomendaciones del Informe Social.

Por los fundamentos que expondremos a continuación, **EXPEDIMOS** y **MODIFICAMOS** las determinaciones recurridas.

---

[1] Examinado el recurso, se acoge como un auto de *certiorari* por ser lo procedente en Derecho. No obstante, se mantendrá inalterada su identificación alfanumérica por motivos de economía procesal.

## I.

Según surge del expediente, el 17 de junio de 2024, el foro primario emitió una *Orden a la Unidad Social*.[2] En esta, ordenó a la Unidad Social de Relaciones de Familia y Asuntos de Menores (Unidad Social) a que realizaran un estudio sobre ampliación de relaciones paternofiliales, entre otros.

Así las cosas, el 28 de abril de 2025, la Unidad Social presentó el *Informe Social Forense*, el cual fue preparado por la Trabajadora Social, la Sra. Angelica Alvira Velázquez.[3] En cuanto a la controversia sobre las relaciones paternofiliales, recomendó lo siguiente:

**1. El plan de visita se lleve a cabo de manera escalonada:**

**A.** Los menores se relaci[onarán] con su padre fines de semanas alternos desde sábados a las 10:00 a.m. hasta domingo a las 7:00 p.m. Por un periodo de tres meses. Luego el plan de visita se amplie desde viernes a la salida de la escuela hasta domingo a las 7:00 pm. Del padre no poder buscar a los menores por su horario laboral los viernes el horario de entrega sea a las 6:00 pm. Esto por un periodo de tres meses. Luego de esto el plan de visita se amplie desde viernes a la salida de la escuela hasta lunes a la entrada y de lunes ser feriado los menores estén con el padre hasta martes a la entrada de la escuela. Cuando los menores no tengan clases el lugar de entrega y recogido de los menores continue como lo establecido hasta el momento. En el Centro Comercial de Las Piedras.

**B.** Cuando no sea el fin de semana que los menores se relacionen con el padre, podrán compartir con éste los jueves luego de la salida de la escuela en hasta las 6:30 pm. El lugar de entrega sea el Centro Comercial de Las Piedras.

**C. Acción de Gracias sea alternado:**

Los menores compartirán con ambos padres en años alternos. Comenzando este año 2025, estará con el padre, desde el día de la celebración a las 9:00 am hasta el próximo a las 9:00 am. El próximo año 2026, estará con la madre. El lugar de entrega y recogido continue en el mismo lugar.

**D. Época de Navidad - Las partes alternarán cada año las siguientes:**

---

[2] *Orden a la Unidad Social*, entrada núm. 103 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] *Informe Social Forense*, entrada núm. 205 en SUMAC.

Las partes compartirán con los menores años alternos de la siguiente forma: Comenzando en el 2025, los menores estarán con el padre la desde el 24 a las 9:00 am hasta el 31 de diciembre a la 2:00 pm. Con la madre compartirán desde el 31 de diciembre a la 2:00 pm. hasta el 8 de enero a las 2:00 p.m. Luego deberán continuar con el plan de visita regular.

Los padres podrán realizar modificación por acuerdos entre ellos de ser necesario.

### E. Época de verano

Durante la época de verano este año 2025, los menores estén con el padre del 26 de julio a las 10:00 a.m. al 2 de agosto de 2025 a las 7:00 p.m. Para el 2026, el plan de visita en verano sea del 1 al 15 de julio con la madre y del 16 al 31 de julio con el padre. En el 2027 sea a la inversa del 1 al 15 de julio con el padre y con la madre del 16 al 31 y así sucesivamente los próximos años.

### F. Cumpleaños de los menores

Comenzando en el 2025, de caer día de semana, el padre que no esté en compañía de los menores compartirá con estos un periodo de tres horas y medias. De caer fin de semana el padre que este con los niños permitirá que el otro padre pueda compartir con los menores por un periodo de cuatro horas. Los padres deberán acordar entre ellos el horario. De no lograr acuerdos. Se recomienda que de ser día de la semana el padre pueda compartir con los menores de la salida de la escuela hasta las 6:00 pm. De ser fin de semanas el padre que no estén con los niños compartirá de 12:00 pm a 5:00 pm.

### G. Cumpleaños de la madre y el padre

Los padres podrán relacionarse con su hijo el día de su cumpleaños. De caer en día de semana el padre que le toque la celebración podrá estar con su hijo dicho día hasta el próximo día. Deberá ser responsable en cuanto el asunto escolar. De caer fin de semana el padre a quien le toca la celebración estará con los menores desde las 10:00 am hasta el próximo día a la misma hora si no están bajo su cuidado.

Los padres podrás modificar entre ellos la celebración de su cumpleaños.

### H. Llamadas telefónicas

El padre podrá comunicarse con sus hijos de manera diaria en horario entre 5:30 pm a 6:30 pm. por medio de la utilización de artefactos y aplicación electrónicos tales como *facetime*, tango, *skype*, cámaras *web* y/o celular. La madre deberá fomentar dicho contacto y facilitar el equipo.

Cuando los [menores] estén con el padre, durante el plan de visita, de igual forma la madre podrá comunicarse con los menores por medio de la utilización de artefactos y

aplicación electrónicos tales como *facetime*, tango, skype, cámaras *web* y/o celular. En horario entre 5:30 pm a 6:30 pm. El padre deberá fomentar dicho contacto y facilitar el equipo.

La comunicación telefónica no podrá ser utilizada para auscultar información de un padre u otro. Los progenitores deberán tener mesura con la información que le ofrece a los niños.

**I. Otros:**

1. El padre deberá integrarse a los asuntos médicos de los menores.

2. Ambos progenitores deberán dar seguimiento sobre los servicios psicológicos del menor Gustavo y deberán cumplir con las citas. De no poder costear los gastos deberán acudir al plan médico y gestionar un profesional que este cubierto por dicho plan. En relación con Valeria los padres consideren tratamiento psicosocial para el manejo de emociones según las recomendaciones ofrecidas en la evaluación de la psicóloga del Poder Judicial.

3. Cualquier cambio o modificación en el plan de visitas deberá ser informado con anticipación. Los padres deberán acordar entre ambos cualquier cambios o modificación.

4. Del padre tener la posibilidad de pasar algún tiempo adicional al recomendado que se le considere. Para esto deberá informar con anticipación a la madre y ésta deberá contestar oportunamente.

5. Los progenitores deberán cumplir con el plan de visita según sea determinado por el tribunal.

6. Ambos padres deberán comunicarse de manera respetuosa el uno hacia el otro.

7. La madre deberá mantener informado al padre sobre los asuntos de los menores.

8. Los familiares maternos y paternos, podrá ser recurso de apoyo entre los padres, de ser necesario. No obstante, no podrán hacer ningún comentario a los menores ni de la dinámica familiar entre sus padres.

9. Los progenitores podrán modificar el plan de visita de acuerdo con las necesidades de los niños.

10. Los padres se abstendrán de involucrar a la menor en sus pleitos personales y de mantenerla informada de los asuntos legales a los que se tengan que someter.

11. De los progenitores tener el interés de viajar con sus hijos deberán informar en 30 días de anticipación y ofrecer toda la información sobre el viaje, estadías, entre otros.

1[2]. El padre deberá abstenerse de consumir alcohol durante el plan de visita y mientras se encuentre con los menores.

1[3]. Los padres deberán recibir terapia para mejorar la comunicación y sus estilos de crianza.

Así pues, recibido el *Informe Social*, el 9 de mayo de 2025, el foro primario notificó una *Orden*, en la cual concedió **diez días** a las partes para que expusieran su posición, sujeto a que emitiera Resolución acogiendo las recomendaciones.[4]

El 19 de mayo de 2025, la peticionaria presentó una *Moción en Solicitud de Breve Término Adicional*. Indicó que no habían culminado de discutir el informe, por lo que, solicitó una prórroga hasta el 26 de mayo de 2025.[5]

De igual forma, el Sr. José A. Jiménez Rodríguez (señor Jiménez o "el recurrido") presentó una *Solicitud de Prórroga por Razones de Salud*.[6]

El 22 de mayo de 2024, el foro recurrido notificó una *Orden*, en la cual indicó lo siguiente:[7]

Se le conceden **diez días** finales y perentorios adicionales a las partes para exponer su posición sobre el Informe Social Forense. Cualquier argumentación o planteamiento con respecto a la pensión alimentaria deberán presentarlo en el mismo término.

Así las cosas, el 2 de junio de 2025, el señor Jiménez presentó un *Memorando de Derecho Sobre Cuestiones de Derecho Relacionadas a Alimentos y Posición Sobre el Informe Social Forense*.[8] En esencia, mencionó estar "conforme con los hallazgos y recomendaciones contenidos y plasmados en el Informe

---

[4] *Orden*, entrada núm. 209 en SUMAC.
[5] *Moción en Solicitud de Breve Término Adicional*, entrada núm.
[6] *Solicitud de Prórroga por Razones de Salud*, entrada núm. 212 en SUMAC.
[7] *Orden*, entrada núm. 213 en SUMAC.
[8] *Memorando de Derecho Sobre Cuestiones de Derecho Relacionadas a Alimentos y Posición Sobre el Informe Social Forense*, entrada núm. 214 en SUMAC.

Social Forense rendido por la Unidad de Trabajo Social."
No obstante, únicamente objetó el plan escalonado propuesto al pernocte de los menores.

En la misma fecha, la peticionaria presentó una *Moción Breve Prórroga*.[9] En esta, indicó que la representante legal se encontraba fuera por razones de salud, por lo que, solicitó un último término de **cinco días**.

El 9 de junio de 2025, el foro primario notificó una *Orden*, en la cual le concedió a la peticionaria un término de **diez días** para que se expresara sobre las modificaciones propuestas por el recurrido.[10]

El 10 de junio de 2025, el foro primario notificó una *Orden*, declarando *Ha Lugar* la prórroga de **cinco días** solicitada por la señora Hernández.[11]

El 23 de junio de 2025, la peticionaria presentó una *Moción Solicitud Término Perentorio Final* de cinco días.[12]

En la misma fecha, el señor Jiménez presentó su *Oposicion a Prórroga Adicional*.[13] Arguyó que, la señora Hernández había tenido oportunidad suficiente para fijar su posición, por lo que, solicitó fuera denegada la prórroga y, en consecuencia, acogiera el plan de relaciones paternofiliales recomendado por la Unidad Social.

Posteriormente, el 29 de junio de 2025, la peticionaria presentó *Moción Cumplimiento Orden e*

---

[9] *Moción Breve Prórroga*, entrada núm. 215 en SUMAC.
[10] *Orden*, entrada núm. 216 en SUMAC.
[11] *Orden,* entrada núm. 217 en SUMAC.
[12] *Moción Solicitud Término Perentorio Final*, entrada núm. 218 en SUMAC.
[13] *Oposicion a Prórroga Adicional*, entrada núm. 219

*Informando Impugnación Informe Social Forense*.[14] En síntesis, solicitó que no fueran acogidas las recomendaciones del Informe Social, debido a que, no se ajustaban a la realidad y por estar en contra del interés óptimo de los menores.

El 8 de julio de 2025, el señor Jiménez presentó su oposición a la moción de la peticionaria, por ser tardía, inmeritoria e improcedente.[15] Alegó que, siempre ha cumplido con todos los requerimientos impuestos por el foro *a quo*, mientras que la peticionaria lo que ha provocado es dilación en las relaciones paternofiliales. Por ello, solicitó denegara el escrito de la señora Hernández y acogiera el Informe Social.

Posteriormente, el 22 de julio de 2025, el señor Jiménez presentó *Extrema Urgente Solicitud Reiterando Solicitud para Relaciones Paternofiliales durante Verano 2025 y Sobre Otros Extremos*.[16]

Evaluadas las mociones presentadas por las partes, el 23 de julio de 2025, el foro primario notificó la *Orden* apelada, mediante la cual indicó lo siguiente:[17]

> Evaluadas las mociones de las partes en cuanto a los términos adicionales solicitados por la parte demandante sobre el Informe Social y la Moción de Impugnación, este Tribunal dispone:
>
> 1. No Ha Lugar.
>
> 2. Hacemos constar que el Informe Social Forense fue radicado el 28 de abril de 2025, y el primer término de diez días a las partes para exponer posición se concedió a través de Orden el 9 de mayo de 2025. Posteriormente, ambas partes presentaron mociones de prórroga, lo que se les otorgó

---

[14] *Moción Cumplimiento Orden e Informando Impugnación Informe Social Forense*, entrada núm. 220 en SUMAC.
[15] *Oposición a Moción SUMAC #220 y #221 por ser tardías, inmeritorias e improcedentes y constituir abuso del derecho*, entrada núm. 222 en SUMAC.
[16] *Extrema urgente Solicitud Reiterando Solicitud para Relaciones Paternofiliales durante Verano 2025 y Sobre Otros Extremos*, entrada núm. 224 en SUMAC.
[17] *Orden*, entrada núm. 225 en SUMAC.

mediante *Orden* el 22 de mayo de 2025, notificada el mismo día. Se les dio un término final y perentorio de diez días.

3. Así las cosas, el 2 de junio de 2025, la parte demandante nuevamente solicita cinco días adicionales, y el 9 de junio de 2025 se le proveen diez días adicionales.

4. La Moción de Impugnación se presentó vencido el término brindado y dos meses de sometido el Informe Social, por lo que se emitirá Resolución acogiendo las recomendaciones de la Unidad de Trabajo Social.

En la misma fecha, notificó otra *Orden*, en la cual reiteró que no concedía el término adicional solicitado por la peticionaria, por consiguiente, acogía las recomendaciones del Informe Social.[18]

Así las cosas, el 24 de julio de 2025, el foro primario notificó una *Resolución* mediante la cual detallaba y acogía las recomendaciones del *Informe Social Forense*.[19]

En desacuerdo, el 28 de julio de 2025, la señora Hernández presentó una *Urgente Reconsideración por Craso Error de Derecho y Patente Violación al Debido Proceso de Ley*.[20] En esencia, sostuvo que las ordenes emitidas por el foro primario eran contrarias a derecho y resultaban en el menoscabo del debido proceso de ley. Alegó que, el foro *a quo* aplicó la sanción mas severa, al eliminar sus alegaciones, aun cuando no le advirtió que estas serían eliminadas por no comparecer en el término final concedido, como tampoco que su representante legal haya recibido una sanción. Asimismo, señaló que la orden apelada tuvo el efecto de acelerar e implementar abruptamente el plan de

---

[18] *Orden*, entrada núm. 226 en SUMAC.
[19] *Resolución*, entrada núm. 227 en SUMAC.
[20] *Urgente Reconsideración por Craso Error de Derecho y Patente Violación al Debido Proceso de Ley*, entrada núm. 229 en SUMAC.

relaciones paternofiliales recomendado por la Unidad Social en menoscabo del interés óptimo de los menores. Por ello, solicitó fuera reconsiderada la determinación, y no fueran eliminadas sus alegaciones, por consiguiente, que se debía continuar el procedimiento de impugnación del Informe Social.

El 26 de agosto de 2025, el foro primario mediante *Orden*, denegó la moción de reconsideración.[21]

Aun inconforme, el 25 de septiembre de 2025, la señora Hernández presentó el recurso de epígrafe, en el cual planteó los siguientes señalamientos de error:

> **Primer Señalamiento de Error**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE RELACIONES DE FAMILIA DE HUMACAO, AL DICTAR RESOLUCIÓN Y DESESTIMAR LAS ALEGACIONES DE LA APELANTE, SIN CUMPLIR CON EL PROCEDIMIENTO DISPUESTO EN LA REGLA 39.2 DE LAS DE PROCEDIMIENTO CIVIL EN CRASA VIOLACIÓN AL DEBIDO PROCESO DE LEY DE LA APELANTE Y EN DETRIMENTO DEL INTERÉS ÓPTIMO DE LOS MENORES.

> **Segundo Señalamiento de Error**: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE RELACIONES DE FAMILIA DE HUMACAO AL REALIZAR EL CÓMPUTO DE LOS TÉRMINOS PARA LA COMPARECENCIA EN CONTRAVENCIÓN CON LAS REGLAS DE PROCEDIMIENTO CIVIL Y LA JURISPRUDENCIA APLICABLE POR LO QUE ACTUÓ CONTRARIO A LA LEY.

El 29 de septiembre de 2025, emitimos una *Resolución* concediéndole a la parte apelada el término dispuesto en nuestro Reglamento, según enmendado, para que se expresara sobre el recurso de epígrafe.

El 27 de octubre de 2025, el señor Jiménez presentó una *Moción Solicitando la Desestimación del Recurso por Falta de Perfeccionamiento Debido a Incumplimientos Crasos de la Apelante; en la alternativa, Solicitando*

---

[21] *Orden*, entrada núm. 236 en SUMAC.

*Breve Término Adicional para Presentar Alegato del Apelado Debido a Justa Causa.*

El 29 de octubre de 2025, emitimos una *Resolución*, concediéndole al recurrido hasta el 12 de noviembre de 2025, para que presentara su escrito en oposición.

En cumplimiento con nuestra orden, el 12 de noviembre de 2025, el señor Jiménez presentó su *Alegato en Oposición a la Apelación.*

Contando con la comparecencia de todas las partes, procedemos a atender el recurso de epígrafe. Veamos.

**II.**

**-A-**

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *certiorari*. En lo pertinente, dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

La regla procesal fija taxativamente los asuntos aptos para la revisión interlocutoria mediante el

recurso de *certiorari*, así como aquellas materias que, por excepción, ameritan nuestra intervención adelantada, ya fuese por su naturaleza o por el efecto producido a las partes. *800 Ponce de León v. AIG,* supra, pág. 175.

De otra parte, para ejercer prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *certiorari*, nos guiamos por los criterios expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, la cual establece:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Claro está, es norma cierta que este foro intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio

discrecional, excepto cuando se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, en error manifiesto. *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018), citando a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

### -B-

Como regla general, a los progenitores les asiste el derecho de velar por el cuido, custodia y control de sus hijos. *James Montes v. Montes James*, 213 DPR 718 (2024); *Rentas Nieves v. Bentancourt Figueroa*, 201 DPR 416, 428 (2018). La Ley Núm. 223-2011, según enmendada, conocida como la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia* (en adelante, Ley Núm. 223-2011), 32 LPRA sec. 3181 *et seq.*, entre otras cosas, persigue "promover un mayor grado de participación y presencia de ambos progenitores en la vida de los niños que son producto de una pareja divorciada o de una pareja consensual separada […] a los fines de contribuir a una mejor calidad de vida". *Íd.,* Exposición de Motivos. De esta manera se les permite a los menores no emancipados, "el derecho a disfrutar de ambos progenitores en su vida, en el mayor grado posible, en la misma forma que se les garantiza a los niños que viven con ambos progenitores". *Íd.* Así pues, la Ley Núm. 223-2011, *supra*, tiene como propósito establecer la política pública a favor de la promoción de la custodia y patria potestad compartida, para facilitar la continuidad y fortalecimiento de los vínculos afectivos que se deben caracterizar con una buena relación paterno

o materno filial. *Torres Ojeda, Ex Parte*, 118 DPR 469 (1987).

El Tribunal Supremo de Puerto Rico ha afirmado que, de conformidad con las prerrogativas que derivan del poder de *parens patriae* del Estado, el tribunal ostenta amplias facultades para ejecutar las medidas que estime necesarias, al determinar la custodia de un menor. *Jusino González v. Norat Santiago*, supra, pág. 865. Por igual, los tribunales deben guiarse principalmente por el bienestar y los mejores intereses del menor ya que éstos constituyen la piedra angular de la política pública. *Peña v. Peña*, 164 DPR 949, 832-833 (2005); *Marrero Reyes v. García Ramírez*, 105 DPR 90, 104 (1976). Por tanto, ante una determinación sobre custodia, los tribunales están llamados a realizar un análisis objetivo, sereno y cuidadoso de todas las circunstancias presentes en el caso ante su consideración. *Jusino González v. Norat Santiago*, supra, pág. 864; *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 651 (2016); *Ortiz v. Meléndez*, 164 DPR 16, 26-27 (2005). A su vez, los foros judiciales están asistidos por la Unidad Social de Relaciones de Familia y Asuntos de Menores, que tiene como función principal ofrecer asesoramiento social mediante evaluaciones periciales que permitan al tribunal tomar decisiones informadas en los casos ante su consideración. *Jusino González v. Norat Santiago*, supra, pág. 865; *Muñoz Sánchez v. Báez de Jesús*, supra, pág. 652. Estos funcionarios se rigen por un manual denominado como *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores*. Ello así, porque al dilucidar las relaciones filiales, custodia o patria potestad de un menor, el foro judicial

debe contar con la información más completa y variada que sea posible, de modo que pueda resolver acorde a su mejor bienestar. *Jusino González v. Norat Santiago*, supra, págs. 865-866. Por ello, cuando exista una controversia entre los progenitores en torno a las relaciones filiales de un menor, el tribunal referirá el caso a un trabajador social. Véase, cláusula VII en las *Normas y Procedimiento de las Unidades de Relaciones de familia y Asuntos de Menores*. En tal escenario, el mencionado trabajador social estará encargado de realizar una evaluación y rendir un informe con recomendaciones al tribunal. *Íd*. Dicha evaluación se denomina evaluación social forense. Específicamente, el Manual de Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores define el concepto de evaluación social forense como sigue:

> Proceso de análisis en el cual se sigue un protocolo uniforme para que el (la) Trabajador(a) Social adiestrado(a) en casos de familia y asuntos de menores pueda brindar asesoramiento al (a la) Juez(a) en relación con la controversia referida por el Tribunal. Refleja en forma objetiva y científica la personalidad del individuo y el entorno familiar. *Íd*.

Culminada tal evaluación, el trabajador social debe emitir un Informe Social Forense, este último es el:

> Producto final del proceso de evaluación donde se atiende la controversia referida por el Tribunal, se ofrecen recomendaciones sobre la controversia y se destacan todas las áreas evaluadas, la fuente de datos, e integra el conocimiento teórico o razonamiento que fundamenta las recomendaciones.

En cuanto a las recomendaciones emitidas por el Trabajador Social respecto al derecho a relaciones filiales, este identificará los factores que afecten el

plan y recomendará la ayuda que requiera la familia para superar sus limitaciones. Véase, cláusula VII en las *Normas y Procedimiento de las Unidades de Relaciones de familia y Asuntos de Menores*. Así pues, el Tribunal tendrá discreción judicial para la determinación, protegiendo siempre los mejores intereses y bienestar de los menores a la luz de todas las circunstancias existentes.

-C-

Por otro lado, es norma firmemente establecida que los tribunales apelativos no intervienen con el manejo de los casos por parte del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". Lluch v. España Service Sta., 117 DPR 729, 745 (1986). Véase, además, Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR 314 (2023); Cruz Flores v. Hospital Ryder Memorial Inc., 210 DPR 465, 497 (2022); SLG Fernández-Bernal v. RAD-MAN et al., 208 DPR 310, 338 (2021); VS PR, LLC v. Drift-Wind, Inc., 207 DPR 253, 273 (2021). Conviene destacar que "la discreción se fundamenta [entre otras,] en el contacto con los litigantes y la prueba que se haya presentado" ante el foro sentenciador. *Citibank v. ACBI et al.*, supra, pág. 736. Por esta razón, se presume que el Tribunal de Primera Instancia conoce mejor las particularidades del caso y está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar para llegar eventualmente a una

disposición final. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 142 (2013); *Mejías et al. v. Carrasquillo et al,* 185 DPR 288, 306-307 (2012); *Banco Popular de Puerto Rico v. Gómez Alayón*, supra.

De modo que, el ejercicio de las facultades discrecionales por el foro de instancia merece nuestra deferencia salvo que incurra en algunas de las conductas previamente mencionadas y si a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 794 (2020).

### III.

En el caso de autos, la señora Hernández plantea dos señalamientos de error, los cuales por estar relacionados los discutiremos en conjunto. En esencia, alega que incidió el foro primario al incumplir con la Regla 39.2 de las Reglas de Procedimiento Civil, provocando crasa violación al debido proceso de ley.

Señala que, durante el trámite del caso no hubo dilaciones innecesarias y que cumplió con cada una de las órdenes emitidas por el foro primario, aun cuando solicitó prórrogas por justa causa. Por ello, sostiene que presentó en tiempo su moción impugnando las determinaciones y recomendaciones consignadas en el Informe Social. Sin embargo, que el foro primario desestimó de manera improcedente sus alegaciones. Añade que, la resolución emitida por el foro *a quo* tuvo el efecto de eliminar sus alegaciones, sin remedio ulterior alguno.

Según mencionamos, el Informe Social es el producto final que detalla todas las áreas evaluadas por los trabajadores sociales. Es un documento con un alto valor

para el tribunal puesto que contiene los hallazgos y recomendaciones de expertos y peritos en las relaciones de familia. Si bien es cierto que el Informe Social Forense no es el único factor que los tribunales toman en consideración, esto no significa que los tribunales pueden obviar por completo el contenido de los informes.

A su vez, en el proceso decisorio en torno al derecho de las relaciones filiales de un menor se requiere la evaluación de varios criterios sociales que inciden en el mejor interés de estos. Por ello, es conocido que las partes afectadas por un Informe Social tienen derecho a examinarlo y el foro de instancia está obligado a proveer una oportunidad para que las partes afectadas puedan formular objeciones al mismo o presentar prueba en contra de las conclusiones de dicho informe. *Rentas Nieves v. Betancourt Figueroa*, supra.

En el caso ante nuestra consideración, luego de evaluar la conducta procesal de la señora Hernández, determinamos que no abusó de su discreción el foro primario al denegar la moción de impugnación, puesto que, fue presentada fuera del término brindado.

El 28 de abril de 2025, la Trabajadora Social presentó el *Informe Social Forense*. El 9 de mayo de 2025, el foro recurrido notificó una *Orden* concediéndole a las partes **10 días** para que se expresaran, sujeto a que emitiera una resolución acogiendo las recomendaciones. No obstante, la peticionaria solicitó una primera prórroga el 19 de mayo de 2025, a la cual el foro primario le concedió **10 días**. Posteriormente, la señora Hernández, el 2 de junio de 2025, solicitó una segunda prórroga; sobre la cual el foro primario le concedió **5 días**. En la misma fecha, el 2 de junio de

2025, el señor Jiménez presentó su *Posición Sobre el Informe Social Forense*, en el cual objetó el plan escalonado propuesto al pernocte de los menores. Por lo que, el foro primario le concedió a la peticionaria un término de **10 días** para que se expresara sobre dicha objeción. El 23 de junio de 2025, la señora Hernández presentó otra prórroga de 5 días. Finalmente, el 29 de junio de 2025, presentó su moción impugnando el Informe Social.

El foro primario concedió todas las prórrogas solicitadas por las partes, siendo la última prórroga concedida el 10 de junio de 2025, por 5 días, este término venció el 17 de junio de 2025. El término de 10 días concedido a la peticionaria el 9 de junio de 2025, era para que se expresara sobre la moción presentada por el señor Jiménez. Por ello, el hecho de que la señora Hernández haya presentado su moción impugnando el Informe el 29 de junio de 2025, este fue presentado fuera del término provisto. Si algo demuestra el tracto procesal del caso es que la peticionaria tuvo múltiples oportunidades para impugnar el *Informe Social Forense*.

De este modo, justipreciamos que el foro recurrido no cometió los señalamientos de error planteados por la señora Hernández, sobre incumplimiento con las Reglas de Procedimiento Civil.

Finalmente, evaluado el expediente en este caso, incluyendo los distintos escritos de las partes, en el Tribunal de Primera Instancia y en este Foro, consideramos que el dictamen impugnado es correcto en Derecho. Sin embargo, la falta de diligencia de la peticionaria en su atención a las órdenes del Tribunal no deben ser determinantes al momento de justipreciar el

mejor interés de los menores al definir y programar las relaciones de éstos con su padre. Por ello, y en gran parte ante la falta de diligencias adecuadas de la peticionaria, se mantienen las relaciones paterno filiales establecidas por el Tribunal, pero de manera provisional. Para poder definir de forma fija las relaciones de los menores con su padre el Tribunal deberá celebrar una vista dentro de los próximos treinta (30) días para evaluar los planteamientos y evidencia que las partes puedan tener. Por ello, procedemos a mantener las determinaciones emitidas por el foro primario, pero de forma provisional. El foro primario deberá celebrar una vista para fijar las relaciones de los menores con su padre.

**IV.**

Por los fundamentos antes expuestos, **EXPEDIMOS** el auto de *certiorari* y **MODIFICAMOS** las determinaciones recurridas, para mantenerlas de forma provisional. En los próximos treinta (30) días el Tribunal celebrará una vista para atender los planteamientos de las partes y la evidencia que tengan las partes con relación al *Informe Social* de este caso.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones